UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BIOTECHNOLOGY INDUSTRY ORGANIZATION, <br><br> Plaintiff <br><br> vs. <br><br> THE DISTRICT OF COLUMBIA, <br><br> ANTHONY A. WILLIAMS, in his official capacity as Mayor of the District of Columbia, <br><br> OFFICE OF THE ATTORNEY GENERAL OF THE DISTRICT OF COLUMBIA <br><br> and <br><br> ROBERT J. SPAGNOLETTI, in his official capacity as the Attorney General of the District of Columbia <br><br> Defendants. | Civil Action No._____ <br> Honorable Richard J. Leon |

**DECLARATION OF IAN T. CLARK**

I, Ian T. Clark, declare as follows:

1. I am the Senior Vice President, Commercial Operations of Genentech, Inc ("Genentech"). I have been involved with managing and advising Genentech with respect to distribution of our patented prescription products since I joined Genentech in January 2003. I am knowledgeable about Genentech's sales transactions, distribution system, and wholesale and retail customers. I oversee and manage the distribution chain operations of Genentech's prescription products that are ultimately offered for sale by retailers and hospitals in the

District of Columbia. I make this declaration based on my personal knowledge and on information collected from employees in my organization.

2. Genentech is a corporation organized and existing under the laws of Delaware that maintains its principal place of business in South San Francisco, California. Genentech is a member of the Biotechnology Industry Organization ("BIO"), the plaintiff in this action.

3. Since the company was founded in 1976, Genentech has focused its drug discovery efforts on therapies that address unmet medical needs. Genentech uses human genetic information to design and develop new biotherapeutic agents. Genentech currently markets 13 products with more than 30 ongoing development projects. All of Genentech's products are prescription only.

4. Genentech sells the vast majority of its patented prescription products to customers outside the District of Columbia. Almost all of Genentech's prescription products that are ultimately offered for sale in the District are sold in the District by (a) retail chains to which Genentech sold the products outside the District; (b) retail sellers or hospitals that purchased the products from wholesalers to whom Genentech sold the product outside the District; and/or (c) wholesalers and/or specialty pharmacies to whom Genentech sold the product outside the District. Therefore, it is only the rare transaction to which Genentech is a party that would occur in the District and be covered by the D.C. Prescription Drug Excessive Pricing Act of 2005 ("the D.C. Act").

5. Genentech does not have its principal place of business, nor any production or warehousing facilities, in the District of Columbia. Moreover, to the best of its knowledge none of the wholesalers or specialty pharmacies to which Genentech sells the vast majority of its

products has headquarters or warehouses in the District of Columbia. Genentech sells the bulk of its products to AmerisourceBergen Corporation; Cardinal Health; McKesson Corporation; Caremark, Inc.; Medco/Accredo Health; and Express Scripts, which are headquartered in Pennsylvania, Ohio, California, Illinois, Tennessee and Missouri, respectively. To the best of my knowledge none of these wholesalers or specialty pharmacies maintains warehouses or similar facilities in the District of Columbia. Nor do these wholesalers or specialty pharmacies receive shipments of product from Genentech in the District. Genentech also sells a small portion of its products to major retail chains. These sales transactions occur wholly outside the District. The chains ship the products into the District for sale in their retail outlets, without the involvement of Genentech.

6. If Genentech were required to comply with the terms of the D.C Act, its national pricing structures would be severely disrupted. Genentech lacks the ability to dictate where particular shipments of products to wholesalers, specialty pharmacies or retail chains are ultimately offered for retail sale. Therefore, under the D.C. Act, Genentech would be required to adjust not just the prices of products to be offered for sale in the District (as such products are unidentifiable), but the prices of patented prescription products sold elsewhere in the country.

7. Moreover, Genentech is not able to dictate the price a wholesaler or specialty pharmacy that buys its products can charge upon resale. Nor can Genentech dictate the retail price to be offered by retail chains that buy prescription products from Genentech or a wholesaler or specialty pharmacy. Therefore, Genentech would be unable to know with certainty what ex manufacturer price would be sufficient to shield it from liability under the D.C. Act.

8. In short, were the D.C. Act to take effect, Genentech would not know how to apply the D.C. Act to its own actions and the actions of third-parties selling Genentech products, making compliance with the law difficult. Moreover, any attempt to comply through price reductions could result in potentially substantial decreases in profits and would diminish expectations for funding for research and development of new products.

9. For these reasons, Genentech would be injured were the D.C. Act to take effect.

I declare under penalty of perjury that the foregoing is true and correct..

Executed on October 25, 2005.

_____

Ian T. Clark

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

State of _California_

County of _San Mateo_

On _October 25, 2005_ before me, _Ann Savelli, Notary Public_,
Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Ian T. Clark_,
Name(s) of Signer(s)

☑ personally known to me -OR- ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~ executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~ signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

[Notary Seal: ANN SAVELLI, COMM. #1446854, Notary Public-California, SAN MATEO COUNTY, My Comm. Exp. Oct 23, 2007]

WITNESS my hand and official seal.

_Ann Savelli_
Signature of Notary Public

------------OPTIONAL------------

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _Declaration_

Document Date: _October 25, 2005_    Number of Pages: _4_

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____

☐ Individual
☐ Corporate Officer
☐ Titles(s): _____
☐ Partner - ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

[RIGHT THUMBPRINT OF SIGNER — Top of Thumb here]

Signer Is Representing: _____

Signer's Name: _____

☐ Individual
☐ Corporate Officer
☐ Title(s): _____
☐ Partner - ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

[RIGHT THUMBPRINT OF SIGNER — Top of Thumb here]

Signer Is Representing: _____