UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BIOTECHNOLOGY INDUSTRY ORGANIZATION,<br><br>Plaintiff<br><br>vs.<br><br>THE DISTRICT OF COLUMBIA,<br><br>ANTHONY A. WILLIAMS, in his official capacity as Mayor of the District of Columbia,<br><br>OFFICE OF THE ATTORNEY GENERAL OF THE DISTRICT OF COLUMBIA<br><br>and<br><br>ROBERT J. SPAGNOLETTI, in his official capacity as the Attorney General of the District of Columbia,<br><br>Defendants. | Civil Action No._____<br>Honorable Richard J. Leon |

## DECLARATION OF RICHARD H. BOWEN

I, Richard H. Bowen, declare as follows:

1. I am the Vice President, Operations Information Systems, Control & Coordination of Ligand Pharmaceuticals Incorporated ("Ligand"). I have been responsible for contracting and coordination for the distribution of Ligand's patented prescription products since March 1, 2001. I am knowledgeable about Ligand's sales transactions, distribution system, and wholesale and retail customers. I have knowledge of the distribution chain of Ligand's

prescription products that are ultimately offered for sale by retailers and hospitals in the District of Columbia.

2. Ligand is a corporation organized and existing under the laws of Delaware that maintains its principal place of business in San Diego, California. Ligand is a member of the Biotechnology Industry Organization ("BIO"), the plaintiff in this action.

3. Ligand was incorporated in 1987. Ligand discovers, develops and markets new drugs that address critical unmet medical needs of patients in the areas of cancer, pain, skin diseases, men's and women's hormone-related diseases, osteoporosis, metabolic disorders, and cardiovascular and inflammatory diseases. Ligand's proprietary drug discovery and development programs are based on its leadership position in gene transcription technology, primarily related to intracellular receptors.

4. Ligand sells only a small portion of its patented prescription products directly into the District of Columbia. The vast majority of Ligand's prescription products that are ultimately offered for sale in the District are sold in the District by (a) retail chains to which Ligand sold the products outside the District; and/or (b) retail sellers or hospitals that purchased the products from wholesalers to whom Ligand sold the product outside the District. Therefore, only a de minimis portion of the transactions to which Ligand is a party that would be covered by the D.C. Prescription Drug Excessive Pricing Act of 2005 ("the D.C. Act") occurs in the District.

5. Ligand does not have its principal place of business, nor any production or warehousing facilities, in the District of Columbia. Moreover, none of the wholesalers to which Ligand sells the majority of its products has headquarters or warehouses in the District of Columbia.

Ligand sells most of its products to Cardinal, McKesson, and Amerisource Bergen, which sales are not into the District of Columbia. None of these wholesalers maintains warehouses or similar facilities in the District of Columbia. Nor do these wholesalers receive shipments of product from Ligand in the District. Ligand also sells a portion of its products to major retail chains. These sales transactions occur wholly outside the District. The chains ship the products into the District for sale in their retail outlets, without the involvement of Ligand.

6. If Ligand were required to comply with the terms of the D.C Act, its national distribution services agreements and certain product pricing structures would be substantially disrupted. Ligand lacks the ability to dictate where particular shipments of products to wholesalers or retail chains are ultimately offered for retail sale. Therefore, under the D.C. Act, Ligand may be required to adjust not just the prices of products to be offered for sale in the District (as such products are unidentifiable), but the prices of all patented prescription products.

7. Moreover, Ligand does not seek to, and is not able to limit the price a wholesaler that buys its products can charge upon resale. Nor can Ligand dictate the retail price to be offered by retail chains that buy prescription products from a wholesaler. Therefore, Ligand would be unable to know with certainty what ex manufacturer price would be sufficient to shield it from liability under the D.C. Act.

8. In short, were the D.C. Act to take effect, Ligand would not be certain how to fully comply with the law. Because the Act defines "excessive price" with reference to comparable prices in foreign

countries in which one of Ligand's products are offered for sale, Ligand would be required to reconsider its pricing scheme both domestically and abroad.

9. For these reasons, Ligand would be injured were the D.C. Act to take effect.

I declare under penalty of perjury that the foregoing is true and correct..

Executed on this 25th day of October, 2005 at San Diego, California.

*Richard H. Bowen*

RICHARD H. BOWEN

SWORN AND SUBSCRIBED before me
this 25 day of October, 2005

*Barbara J. Olson*
Notary Public

BARBARA J. OLSON
COMM. #1370843
NOTARY PUBLIC • CALIFORNIA
SAN DIEGO COUNTY
Commission Expires Aug. 18, 2006