UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BIOTECHNOLOGY INDUSTRY ORGANIZATION )<br>)<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>THE DISTRICT OF COLUMBIA, )<br>)<br>ANTHONY A. WILLIAMS, )<br>in his official capacity as Mayor of the District )<br>of Columbia, )<br>)<br>OFFICE OF THE ATTORNEY GENERAL OF )<br>THE DISTRICT OF COLUMBIA )<br>)<br>and )<br>)<br>ROBERT J. SPAGNOLETTI, in his official )<br>capacity as the Attorney General of the District )<br>of Columbia )<br>)<br>Defendants. )<br>) | Civil Action No. _____<br>Honorable Richard J. Leon |

**DECLARATION OF ROBERT HAMM**

I, Robert Hamm, declare as follows:

1. I am Senior Vice President of Biogen Idec Inc. ("Biogen Idec"). I have been responsible for coordinating the distribution of Biogen Idec's AVONEX® and AMEVIVE® prescription products since January 2003. I am knowledgeable about Biogen Idec's sales transactions, distribution system, and wholesale and retail customers for these products. I have knowledge

of the distribution chain of Biogen Idec's therapeutic products that are ultimately offered for sale by retailers and hospitals in the District of Columbia.

2. Biogen Idec Inc. is a corporation organized and existing under the laws of Delaware that maintains its principal place of business in Cambridge, Massachusetts. Biogen Idec Inc. is a member of the Biotechnology Industry Organization ("BIO"), the plaintiff in this action.

3. Biogen Idec Inc. is a global biotechnology company that makes leading protein-based therapeutic products for oncology, neurology and immunology. Biogen Idec Inc. was created by the 2003 merger of Biogen Inc., founded in 1978, and IDEC Pharmaceuticals Corporation, founded in 1985. In the past 27 years, Biogen Idec has developed significant biologic therapies for serious and life-threatening diseases, including AVONEX® for relapsing forms of multiple sclerosis, ZEVALIN® for Non-Hodgkin's B cell lymphoma, AMEVIVE® for moderate to severe chronic plaque psoriasis, and RITUXAN® for Non-Hodgkin's lymphoma.[1]

4. Biogen Idec does not sell AVONEX® or AMEVIVE® directly into the District of Columbia, either by itself or by any of its subsidiaries. All of the AVONEX® and AMEVIVE® that is ultimately offered for sale in the District is sold in the District by (a) retail sellers or hospitals that purchased the products from wholesalers to whom Biogen Idec sold the product outside the District and/or (b) specialty pharmacies or specialty distributors to which Biogen Idec

---

[1] RITUXAN® is co-marketed by Biogen Idec and Genentech (South San Francisco, CA) but is sold and distributed by Genentech.

sold products outside the District. Therefore, for the bulk of Biogen Idec's products covered by patents, the transactions to which Biogen Idec is a party do not occur in the District.

5. Biogen Idec does not have its principal place of business, nor any production or warehousing facilities, in the District of Columbia. Moreover, to Biogen Idec's knowledge, none of the wholesalers to which Biogen Idec sells AVONEX® and AMEVIVE® has headquarters or warehouses in the District of Columbia. Biogen Idec sells the bulk of these products to wholesalers Cardinal Health Inc., headquartered in Dublin, OH; McKesson Pharmaceutical Solutions, headquartered in San Francisco, CA; and Amerisource Bergen, headquartered in Chesterbrook, PA. To Biogen Idec's knowledge, none of these wholesalers maintains warehouses or similar facilities in the District of Columbia. Nor do these wholesalers receive shipments of product from Biogen Idec in the District. Biogen Idec also sells a portion of these products to specialty pharmacies and specialty distributors. These sales transactions occur wholly outside the District. To Biogen Idec's knowledge, the specialty pharmacies and specialty distributors sell and ship the products into the District for sale to consumers or health care providers.

6. In the case of ZEVALIN®, a radiolabelled antibody product, Biogen Idec sells a non-radiolabelled antibody to radiopharmacies across the country. Two of these are located in government hospitals in the District. The radiopharmacies make the finished patented prescription product by coupling a radioisotope to the antibody and then sell the finished product directly to health care providers. Biogen Idec does not sell or supply for sale the finished product administered to patients in the District, nor does Biogen Idec control the radiopharmacies' cost or the prices that they set.

7. If Biogen Idec were required to comply with the terms of the D.C Act, its national pricing structures would be severely disrupted. Biogen Idec lacks the ability to dictate where particular shipments of products to wholesalers or specialty pharmacies are ultimately offered for retail sale. Therefore, under the D.C. Act, Biogen Idec would be required to adjust not just the prices of products to be offered for sale in the District (as such products are unidentifiable), but the prices of all prescription products.

8. Moreover, Biogen Idec is not able to limit the price a wholesaler that buys its products can charge upon resale. Nor can Biogen Idec dictate the retail price to be offered by retail chains or specialty pharmacies or specialty distributors that buy prescription products from Biogen Idec or a wholesaler. Therefore, Biogen Idec would be unable to know with certainty what ex manufacturer price would be sufficient to shield it from liability under the D.C. Act.

9. In short, were the D.C. Act to take effect, Biogen Idec would not know how to fully comply with the law. Moreover, any attempt to comply through steep price reductions would result in substantial decreases in profits, as well as a reduced ability for Biogen Idec to fund research and development of new products, and to continue its current programs that provide free products to certain patients of limited financial means. In addition, because the Act defines "excessive price" with reference to comparable prices in foreign countries in which Biogen Idec's products are offered for sale, Biogen Idec would be required to reconsider its pricing scheme both domestically and abroad.

10. For these reasons, Biogen Idec would be injured were the D.C. Act to take effect.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 26, 2005

Robert Hamm
Senior Vice President, Biogen Idec Inc.

BETHANY L. SLACK
Notary Public
Commonwealth of Massachusetts
My Commission Expires
January 1, 2012

-5-